# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>ACADIA INVESTMENTS, L.C.,<br><br>    Debtor. | Case No. 11-12591-RGM<br>(Chapter 11) |
| ACADIA INVESTMENTS, L.C.,<br><br>    Plaintiff,<br><br>vs.<br><br>UBS REAL ESTATE OPPORTUNITY<br>FUND III, L.L.C., *et al.*,<br><br>    Defendants. | Adv. Proc. No. 13-1189 |

## **MEMORANDUM OPINION**

This case is before the court on Acadia Investments, L.C.'s request for attorney's fees in connection with its successful motion to compel discovery. It requests $28,748.95 for prosecuting this basic motion to compel. While an award of attorney's fees is appropriate, the amount requested is excessive. Counsel's hourly rate is outside the reasonable range in this community for the services provided and some of the time expended was unnecessary.

The standard for awarding attorney's fees in the Fourth Circuit was established by the Court of Appeals in *Barber v. Kimbrells, Ltd.,* 577 F.2d 216, 226 (4th Cir.), *cert. denied,* 439 U.S. 934 (1978) in which it adopted the standards articulated in *Johnson v. Georgia Highway Express, Ltd.,* 488 F.2d 714 (5th Cir. 1974). In *Anderson v. Morris,* 658 F.2d 246, 249 (4th Cir. 1981), the Fourth Circuit held that

the district court should apply the lodestar approach, which encompasses the *Johnson* factors (a) and (e) and then adjust the fee with the guidance of the remaining *Johnson* factors. The *Johnson* factors are:

>    (a)  the time and labor required;
>    (b)  the novelty and difficulty of the questions;
>    (c)  the skill required to properly perform the legal services;
>    (d)  the preclusion of other employment by the attorney due to acceptance of the case;
>    (e)  the customary fee;
>    (f)  whether the fee is fixed or contingent;
>    (g)  time limitations imposed by the client or the circumstances;
>    (h)  the amount involved and the results obtained;
>    (I)  the experience, reputation, and ability of the attorneys;
>    (j)  the "undesirability" of the case;
>    (k)  the nature and length of the professional relationship with the client; and
>    (l)  awards in similar cases.

*Johnson*, 488 F.2d at 717-19; *Bank of New York Melon Trust Co., N.A. v. Tysons Financial, LLC (In re Botero-Paramo)*, 483 Fed. Appx. 779, 788 (4th Cir. 2012); *Barber*, 577 F.2d at 226 n.28; *Anderson*, 658 F.2d at 248 n.2.

Acadia is a family-owned investment company that had borrowed significant amounts to fund its investments. The economic conditions around 2008 caused Acadia to have financial difficulties and become in default of its loans. It filed a voluntary petition in bankruptcy on April 7, 2011 and was successful in confirming a plan of reorganization on December 28, 2012. Acadia filed this adversary proceeding on July 11, 2013, seeking recovery of about $1 million from UBS Real Estate Opportunity Fund III, L.L.C.

The basic facts of the case are not disputed. The fund was one of Acadia's investments. The investment contract required Acadia to make capital calls from time to time as requested by the fund. Acadia failed to timely make capital calls pre-petition and became in default of this obligation. Acadia had invested about $1.5 million in the fund and was about $460,000 in arrears in capital calls. The investment contract provided that a defaulting investor's investment could be forfeited

to the fund. Acadia asserts that the fund sold its interest without first forfeiting it and, therefore, Acadia was entitled to the proceeds of the sale over the missed capital calls. The fund asserts that it forfeited Acadia's interest first and then sold it. The principal issue in this case is fairly straight-forward. Acadia's counsel stated:

> The crux of this case is simple: if we are correct, meaning Acadia, and that is – is that the ownership interests in this fund, which would be Acadia's fund, were actually sold, then we win. And what that means is that we would be entitled to the million dollars that they are holding, because their provision in their contract would not allow them for – which is Delaware law – the LLC law in Delaware would not allow them to keep a million-dollar windfall. And if they're correct in this case, which means there was a forfeiture, and not a sale, then they would win. In which case, they would be allowed to invoke a penalty under the Delaware LLC laws for forfeiture, and they would be able to keep the million dollars.

Tr. 3/18/2014 at 6-7.

The discovery requests were directed to the manner in which the fund handled Acadia's and other investors' defaults. The fund objected, albeit late, on the grounds that the information regarding third parties – that is, the other defaulting investors – was irrelevant; that production of the requested information was unduly burdensome; and that the third-party investors' information was protected by the investors' right to privacy. The objections were overruled and the fund was ordered to provide the information. The privacy concerns were resolved by a confidentiality order and redaction of personal identifying information. Much of the material sought was electronic which was the basis of the burdensome objection. The objection was resolved by narrowing the search to specified search terms. Lastly, counsel could not agree on the form of the order and an additional hearing was held to consider the form of the order. The order entered by the court incorporated portions of both draft orders.

Acadia's statement of fees and costs and its supplements show that counsel for Acadia expended a total of 48.0 hours billed at $28,668.00 – 3.9 hours, billed at $2,652.00, to identify discovery deficiencies and negotiate a resolution before filing a motion to compel; 13.7 hours, billed at $6,275.00, to research, draft and file the motion to compel; 15.3 hours, billed at $9,891.00, to prepare for and attend the hearing; 8.5 hours, billed at $5,362.00, to draft and negotiate the form of order to compel; 3.9 hours, billed at $2,652.00, to prepare for and attend the hearing on the competing orders; and 2.7 hours, billed at $1,836.00, to draft and negotiate the final form of order to compel. Three attorneys were involved in the work. Their hourly rates were $680, $490 and $410. Their earliest bar admissions were 1999, 2003 and 2006, respectively.

The time expended must be both reasonable and necessary. Reasonableness starts with the hourly rate. It must be within the reasonable range of fees charged by attorneys performing similar work in the same community. The burden is on the applicant to show what the reasonable hourly rate is. In the absence of satisfactory evidence, the court may rely in its expertise in determining the applicable hourly rate. *Bank of New York Melon Trust Co.*, 483 Fed. Appx. at 788-89. Here, the statements of counsel only set out their hourly rates and not the prevailing hourly rates for comparable services provided by comparable attorneys in this community and the court may apply its knowledge and expertise. Here, Acadia's counsels' rates are outside the reasonable range for attorneys who could represent Acadia in this case.[1] While the case is interesting, it does not require counsel with

---

[1] The court has reviewed numerous fee applications in chapter 11 cases and related adversary proceedings and is very familiar with the prevailing hourly rates for experienced counsel in chapter 11 cases and related adversary proceedings. The finding of the reasonable range of hourly rates is not made on the basis of a single case or an individual attorney, but is found in the spectrum of cases heard in this court. By way of example and as a single data point, counsel at the partner level in this chapter 11 case are charging $490 and $570 an hour in 2014, in the latter case, up from $500 and $540 in prior years. The associate level attorneys are charging $360 an hour in 2014 and were previously charging $320 and $340. The first attorneys in this case – they have since withdrawn – were charging $510 to $525 an hour at the partner level in 2011 with associates at $240 to $250. Both of the now-withdrawn partner-level attorneys are more
(continued...)

4

specialized knowledge or experience. The reasonable range for experienced counsel in this community capable of handling this litigation is currently from $425 to $550 for partner-level attorneys and $300 to $350 for experienced associate-level attorneys. The rates requested by Acadia's counsel, $680, $490 and $410, are outside that range. The rates should be $525, $350 and $300.[2]

The time expended must be necessary. This motion to compel was uncomplicated. Discovery was propounded and objections made. The objections were straight-forward. The facts were simple. No novel interpretation of the law was necessary. But, drafting the motion to compel took 13.7 hours. Preparing for the hearing took about 12.8 hours.[3] Drafting the order took 8.5 hours. This is simply too much time and effort for this motion. The written work was very nicely and comprehensively done – just largely unnecessary. Counsel was well prepared for the hearing, but a large portion of time spent on preparation for the hearing was unnecessary. Counsel reviewed the papers. An associate prepared an outline for the argument. Counsel and the associate met and discussed the planned argument. In light of the nature of the motion, it was simply overkill. No

---

[1](...continued)
experienced than Acadia's counsel in this adversary proceeding.

[2]The court is not impressed with Acadia's counsel's assertion that the $680, $490 and $410 rates are already discounted from their "standard" rates of $710, $520 and $490. Acadia's counsel reports that the percentage of time billed at the higher, standard rates in 2014 was 32%, 47% and 80%, respectively. The implication in quoting a standard rate and a discounted rate is that the "standard" rate is the rate customarily or usually charged and collected. That implication is not warranted when only 32% of the attorney's time is charged at the "standard" rate. In fact, the standard rate is $680 with the $710 rate being a premium rate. The manner in which the hourly rates were presented without the additional disclosure requested by the court, could lead to a misunderstanding of counsel's fee structure. Fee applications should avoid such potential misunderstandings.

[3]The total time in this category was 15.3 hours and included time on March 18, 2014, the day of the hearing, part of which was for preparation for the hearing, part for the hearing and part for actions after the hearing. The time for preparing for the hearing and appearing in court was lumped into a single time entry. The transcript shows that court convened at 9:30 and the argument on the motion concluded at 10:40. Of the 5.7 hours recorded for March 18, 2014, the day of the hearing, all but 1.4 for the hearing itself and 1.1 hours for work performed after the hearing was for preparation, at total of 12.8 hours altogether.

award for attorney's fees will be made for the time expended on the hearing on the competing orders because neither party substantially prevailed on that narrow issue. Portions of both orders were incorporated into the order finally entered by the court.

After applying the *Johnson* factors to the reasonable hourly rate, the court concludes that the appropriate amount of attorney's fees in this case for this motion to compel is $4,815.00.

Alexandria, Virginia
July 3, 2014

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically:

Kristen E. Burgers
Erica L. Morabito

19632